# Fleming's Appeal.

1. A. leased to F. an oil refinery till March 1st 1870, one-third of the net profits, " after deducting all expenses, outlays and losses," to be paid to A., F. " to keep full and correct books of accounts of the business of said firm, and the results of the business are to be made out on the first day of January, 1868, and semi-annually thereafter, and distribution of the net profits, viz.: one-third to said A., and two-thirds to F., shall be made at such time as the parties hereto may determine."   Provision was made for erecting permanent fixtures, if the parties agreed to do so, A. to pay for them, either in cash, or out of his one-third of the net profits, or secure it by a mortgage on the premises.   *Held*, that the account was to be taken at the close of the lease, and not on January 1st 1868.

2. Distribution was not to be made in January 1868, but when the parties might determine.

3. A bill was filed for an account, the answer denied the obligation to furnish an account, the case without replication was referred to a master

to state an account; immediately before the decree on the master's report, a replication *nunc pro tunc* was filed by leave of the court. *Held*, that the want of a replication previously was cured.

November 11th 1870. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the District Court of *Allegheny county*: In Equity: No. 204, to October and November Term 1869.

On the 8th of March 1867, the Ardesco Oil Company entered into a written agreement with Joseph Fleming, Lemuel Wilcox, Jr., Alexander M. Byers, Alexander Nimmick and William K. Nimmick, trading as Fleming & Co., by which the company leased their oil refinery, machinery, &c., to Fleming & Co. until the 1st of March 1870—the lease, however, not to expire at that time unless by three months' notice of one of the parties to the other, and for want of notice the lease was to continue for another year, so on from year to year, to be terminated only on like notice, Fleming & Co. to furnish material and men to operate the works. "Fleming & Co. are to pay said Ardesco Oil Company the one-third of the net profits and gains arising from the business of the said Ardesco Oil Works, after deducting all expenses, outlays and losses. * * * To keep full and correct books of accounts of the business of said firm, and the results of the business are to be made out on the 1st day of January, A. D. 1868, and semi-annually thereafter, and distribution of the net profits, viz.: one-third to said Ardesco Oil Company and two-thirds to Fleming & Co., shall be made at such time as the parties hereto may determine. Fleming & Co. are to have the sole, exclusive and entire control and management of the business and of the said Ardesco Oil Works."

"Fleming & Co. are to have the right and privilege to construct and place in position, on the said Ardesco Oil Works' property, as a part of said works (the said Ardesco Oil Company desiring such improvements made), a large iron tank for crude oil, &c.; also three iron stills, &c.; and should stills and tank be made as aforesaid, the said Ardesco Oil Company hereby agree to pay to said Fleming & Co. the amount which the said tank and stills shall cost, including all expenses in constructing and placing the same in position, which said amount may be paid in cash, or, if the said Ardesco Oil Company may desire, it may be deducted out of the one-third of the net profits payable to them; or the said Ardesco Oil Company will execute a mortgage on said Ardesco Oil Works' property for the amount, payable on the 1st day of March, A. D. 1870. At the termination of this lease, or any renewal thereof, the Ardesco Oil Company are to purchase from Fleming & Co. all the barrels, chemicals, &c., that the said Fleming & Co. may have on hand at the works aforesaid, at the then market price," &c.

On the 18th of February 1868, the company filed a bill against

[Fleming's Appeal.]

Fleming & Co., setting forth the agreement, the entry of the defendants under the lease, and averring that the one-third of the net profits was in lieu of rent, and that the defendants were to render an account on the 1st of January 1868, and semi-annually thereafter, and that large profits had been made; that since the 1st of January 1868 the plaintiffs had demanded an account showing the net profits of the business; that the defendants had refused to comply with the request to furnish an account or to pay the plaintiffs one-third of the net profits; that the defendants furnished an account, but not such as the plaintiffs were entitled to, and did not exhibit the condition of the business, to enable the plaintiffs to determine what was the condition of the business, so that they might determine what were the net profits, and that the account was incorrect.

The prayer was for a decree for an account and payment by the defendants to plaintiffs of the one-third of the balance and for general relief.

The defendants answered, denying that the articles provided for any payment in lieu of rent, or that they were to render an account on the 1st of January 1868, or semi-annually thereafter; shortly after January 1st 1868 they made out a correct account (" B." made part of the pleadings) of the results of the business, believing that to be all they were required to make; they declined to make any payment on account of the one-third of the net profits, because no provision was made by the agreement for distribution of the net profits before March 1st 1870, the end of the term; that the distribution should be made only at such time as the parties should determine, and they had not determined on a time to make distribution; that both parties had declared their wish to have a tank and stills erected, as provided in the articles; the defendants had begun their erection; that the cost would be $30,000 or $40,000; the plaintiffs had refused to pay for them otherwise than by their one-third of the profits, of which at the end of the term there may be none; and had encumbered their property with a mortgage equal to or beyond its value, and had thus disabled themselves from securing the defendants for the cost by a mortgage on the works; that the account furnished was correct, and such as the defendants were bound to make.

No replication was filed, and the case was set down for hearing on bill and answer. On the 8th of August 1868, the court, Hampton, P. J., referred the case "to Thomas Ewing, Esq., as master, to take a *general account* of the business of the defendants in operating the Ardesco Oil Works, and of the *net profits* thereof to the 1st day of January 1868."

The master reported "that the erection of a tank and stills was agreed on by the parties and a stone foundation laid; the iron for the work was on the ground, the cost being estimated at $30,000;

when the defendants, learning that the company were about to mortgage their property for $100,000, and supposing this would endanger their security for the cost of the tanks, &c., requested Mr. O'Hara, the president of the company, 'either to secure them for their outlays or give them some personal pledge for the repayment of the same, at the same time informing him of the probable cost of the improvement, and what they had heard relative to the mortgage of the Ardesco oil property. Mr. O'Hara replied, substantially, that the agreement gave him three ways of paying for the improvements, and that he elected to pay it from the profits of the business, and that he would give them no security, and would make no personal promise to pay it; and that if his share of the profits did not repay the outlay, it would be their loss.' The mortgage was executed and recorded.

" The defendants then declined to proceed with the projected improvements, and removed the iron prepared for the tank, and afterwards sold it at cost to Byers & Co.—a firm identical with Fleming & Co., except that Mr. Wilcox is not a member.

" The foundation and stones hauled still remain a permanent fixture on the premises, and the defendants, having paid the cost thereof, now claimed to recover it from the Ardesco Company as a debt due and unpaid.

" Can the charge be maintained at the present time?" * * *

" In the opinion of the master the facts do not warrant the charge of these items at the *present time* against the Ardesco Company; but the expense was incurred in the reasonable prosecution of the business by Fleming & Co., under the contract, and should for the present be placed in the expense account awaiting the final result of the business.

" It would appear to be for the interest of all the parties to have these improvements completed. They are necessary to the successful management of the works; and if completed, the entire expense would be chargeable to the Ardesco Company, and be either paid in cash or deducted from its share of the profits.

" These items, amounting in all to the sum of $1192.42, are, in the schedules hereto attached, deducted from the Dr. side of the Ardesco Company's account, as found on the books of Fleming & Co., and placed to Dr. side of *expense account*, to await future determination." * * *

The item of amounts paid for insurance was allowed by the master against the plaintiffs.

The master further reported:—

" The defendants appear to have operated the works judiciously, economically and in good faith. Looking at the entire agreement, and taking into consideration all the facts of the case, the master is of the opinion that in law and equity the defendants are entitled to deduct from the earnings the interest they have paid, to

ascertain the net gains and profits of the business, one-third of which is payable to plaintiff." * * *

He stated an account between the parties to January 1st 1868, showing a balance of net profits amounting to $22,560.04.

The plaintiffs filed exceptions to the allowance by the master of the expense of insurance and of interest, and that the cost of the foundation for the tank, &c., was allowed in the expense account.

The defendants excepted, averring that their account rendered under the pleadings was conclusive, and that the cost of the foundation of the tank should be charged to the plaintiffs.

September 24th 1869 the court sustained the plaintiffs' exceptions, as above stated, dismissed the defendants', and referred the account to the master, to be corrected according to this decree.

The master accordingly reported, making the corrections and finding that the balance to the credit of profit and loss was $30,034.89.

On the 25th of September the plaintiff, by permission of the court, filed a general replication, *nunc pro tunc.*

On the 30th of September the court decreed that "the defendants pay to the plaintiff the sum of $10,762.50, being the one-third part of the balance to credit of profit and loss, as corrected by the master's report, including interest from July 1st 1868, together with the costs," &c.

The defendants appealed to the Supreme Court, and assigned the decree for error.

*J. Veech,* for appellants.

*H. Burgwin,* for appellee.

The opinion of the court was delivered, May 8th 1871, by

READ, J.—By articles of agreement, dated 8th March 1867, the Ardesco Oil Company leased to Joseph Fleming and others, partners under the firm of Fleming & Co., their oil refinery property, containing about eight acres, situate in McClure township, Allegheny county, until the 1st of March 1870. The said Fleming & Co. were to operate the said works and to furnish and procure sufficient crude oil, men and material to run the said works to their full capacity, with the proviso, however, that they were not to be run unless the said Fleming & Co. shall deem it profitable to do so.

It was further agreed that the said Fleming & Co. were to pay said Ardesco Oil Company the one-third of the net profits and gains arising from the business of said Ardesco Oil Works after deducting all expenses, outlays and losses. " 4. And the said Fleming & Co. agree to keep full and correct books of accounts

of the business of the said firm, and the results of the business is to be made out on the 1st day of January A. D. 1868, and semi-annually thereafter, and distribution of the net profits, viz.: one-third to said Ardesco Oil Company and two-thirds to Fleming & Co. shall be made at such time as the parties hereto may determine."

Fleming & Co. were to have entire control and management of the business and works. A privilege was given to Fleming & Co. to construct a large iron tank for crude oil, which said company were to pay for in cash, or, if company desires it, it may be deducted out of their one-third of the net profits, or will execute a mortgage on said oil company's property, payable on 1st March 1870.

At the termination of the lease, or any renewal thereof, said company were to purchase from Fleming & Co. all barrels, chemicals, &c., with a provision for a reference in case of disagreement, Fleming & Co. not to be responsible for any injury or damage to the work by fire or other accidents.

Then there is a provision for termination of lease on 1st March 1870, and for renewals thereof.

The bill was filed on 18th February 1868, and states since 1st January 1868 plaintiffs had demanded accounts of business and profits and payments, both of which were refused. 6th and 7th paragraphs admit that defendants had furnished to plaintiffs a balance sheet or trial balance up to 1st January 1868, which is appended as exhibit B, but that it was not such an account as plaintiffs were entitled to, and was incorrect and untrue, and they pray the court to order a full and correct account of the business and profits up to 1st January 1868, and that defendants be decreed to pay plaintiffs one-third part of said net profits.

The answer denies that defendants were to render any other *account* than a statement of the "results of the business" which they have done by furnishing a statement truly made up from their books, but have declined to pay Mr. O'Hara, as demanded, because there is no provision for any distribution or payment prior to the end of the term, and it is provided distribution shall be made at such *time* as the parties thereto may determine, and averring that no such determination has yet been made. After reciting the 7th paragraph of the lease, defendants aver that the parties, having agreed to erect an iron tank, and its erection begun, which would cost from $30,000 to $40,000, plaintiff had mortgaged the property leased to its value and had refused to pay the expense otherwise than by his share of the profits, of which, at the end of the term, there might be none. That "Exhibit B" is a correct and true statement of the "results of the business" up to January 1st 1868.

The want of a replication was cured by the subsequent order of the court, by which it was filed *nunc pro tunc* (2 Dan. Ch.

[Fleming's Appeal.]

Pr. 1st Am. ed. 1846, p. 971; 1 Dan. Pr., 4th ed., by Field and Dunn 776). On the 8th August 1868 the court referred it to Thomas Ewing, Esq., as master, to take a general account of the business of the defendants in operating the Ardesco Oil Works and of *the net profits* thereof to the 1st day of January 1868. The master made a report, to which exceptions were filed by the plaintiff and also by the defendant. The 2d, 3d and 4th exceptions of the plaintiffs were sustained, and the exceptions of the defendants were dismissed, and the account was referred back to the master for correction, which was done in accordance with the decree of the court.

On the 30th September 1869 the court made a final decree, by which the defendants were ordered to pay to the plaintiff the sum of $10,762.50, being the one-third part of the balance to credit of profit and loss, including interest from 1st July 1868, together with the costs of the cause.

It is perfectly clear, from the nature of the lease and its provisions, that the proper period for an account was at the close of the lease, and not on the 1st January 1868, and that the exhibit B was not an account, but the results of the business up to that period, and distribution was to be made at such time as the parties thereto may determine. No such determination was arrived at or made, and, of course, no distribution was to be made or was made, and, consequently, no money was due and payable by the defendants to the plaintiff.

The error on the part of the court was their assumption that on the 1st January 1868 the period of distribution and payment had arrived, and this error pervaded all their proceedings to the final decree, which was palpably wrong and must be reversed. The error commenced with the reference to the master to take a general account. This makes it unnecessary to consider the errors assigned, but, as it may promote a settlement between the parties, we would say that, having read the master's report, we believe him to be entirely correct in all his decisions in relation to the tank, the insurance and interest; and for the reasons assigned by him,

Decree reversed.